IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| B.E., a minor, and JENNA EWING, *Plaintiffs*, v. A.W., a minor, and ROCKFORD CHRISTIAN SCHOOLS, *Defendants*. | No. 3:24-cv-50016 HON. IAIN D. JOHNSTON |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs B.E. and her mother Jenna Ewing bring this action against Defendants A.W. and Rockford Christian Schools (RCS), alleging that A.W. and RCS discriminated against B.E. because she is African American and female. RCS now moves to dismiss the claims against it. For the following reasons, the motion is granted in part and denied in part.

**LEGAL STANDARD**

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

1

## BACKGROUND

B.E., who is African American and female, attended RCS from August 2022 to January 2023. Dkt. 22 ¶¶ 4, 8-9. She was bullied by the other students—in particular, there were several incidents involving a student named A.W. *Id.* ¶¶ 11-15, 21-26, 37, 40-41. For example, on August 21, 2022, A.W. began repeatedly using racial slurs (including the n-word) toward B.E. while playing football. *Id.* ¶ 12. After B.E. reported A.W.'s behavior to the school administration, A.W. and his friends called B.E. a "snitch" and a "bitch," following her around to make comments about her race and gender. *Id.* ¶ 20. During a football game on September 5, 2022, A.W. called B.E. a bitch and slapped her across the face. *Id.* ¶ 23. She slapped him back before trying to back away as he continued calling her a bitch. *Id.* ¶ 26. RCS issued B.E. an in-school suspension for the incident, a decision it upheld after Ms. Ewing (B.E.'s mother) appealed the suspension. *Id.* ¶¶ 27, 30, 33-34. On January 17, 2023, A.W. and his friends followed B.E. during lunch and threw a banana at her. *Id.* ¶ 40.

The bullying caused B.E. "severe physical and emotional distress." *Id.* ¶¶ 46-47. When Ms. Ewing discussed her concerns about B.E.'s treatment with the RCS principal, the principal held back laughter. *Id.* ¶¶ 31, 43.

## DISCUSSION

**I.  Section 1981 (Count I)**

Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *see also*

2

*Bronson v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, 69 F.4th 437, 452 (7th Cir. 2023). For their racial discrimination claim under § 1981, Plaintiffs must allege that "(1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Morris v. Office Max*, 89 F.3d 411, 413-14 (7th Cir. 1996); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006).

RCS argues that Ms. Ewing fails to state a claim against RCS because she hasn't alleged that RCS did anything on account of Ms. Ewing's race. Plaintiffs have two responses, neither of which successfully addresses RCS' argument. First, Plaintiffs respond that Ms. Ewing faced discrimination as a result of her association with her daughter. They rely on a case where the Seventh Circuit noted that it had previously "assumed for the sake of argument that an associational race discrimination claim is possible." *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 348 (7th Cir. 2017) (discussing *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878 (7th Cir. 1998), in which white employees had been discharged because of their association with Black employees). But even if Ms. Ewing can bring an associational race discrimination claim, the complaint doesn't allege any facts about the discrimination that Ms. Ewing *herself* faced. *Cf., e.g., Doe v. Twp. High Sch. Dist. 214*, No. 19-cv-3052, 2020 U.S. Dist. LEXIS 39065, at *18-20 (N.D. Ill. Mar. 6, 2020) (dismissing an associational discrimination claim under the Rehabilitation Act brought by a student's mother because she didn't allege any separate injuries specific to herself). The complaint contains only a

conclusory statement: "RCS discriminated against Ms. Ewing by and through her association to B.E." Dkt. 22 ¶ 53.

Second, Plaintiffs argue that Ms. Ewing can bring a claim as the parent making educational decisions for her daughter. But they rely on a case about the statutory rights that parents have under the Individuals with Disabilities Education Act, *see Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 642 (7th Cir. 2015), and § 1981 doesn't provide similar procedural rights to parents of students. True, Ms. Ewing has a fundamental due process right to direct her daughter's education, but that isn't a blank check. *See Thomas v. Evansville-Vanderburgh Sch. Corp.*, 258 F. App'x 50, 53-54 (7th Cir. 2007). And the complaint doesn't allege any procedural due process injuries that Ms. Ewing suffered like the parents in *Stanek*. Ms. Ewing's § 1981 claim against RCS is dismissed.

As for B.E.'s § 1981 claim, RCS argues that the claim fails because B.E. wasn't a party to the contract between Ms. Ewing and RCS. Plaintiffs contend that B.E. has enforceable rights under the contract as a third-party beneficiary. Whether a third-party beneficiary can bring a claim under § 1981 was left open by the Supreme Court. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 n.3 (2006). But nearly thirty years before that decision, the Seventh Circuit reversed the dismissal of a § 1981 claim based on interference with third-party beneficiary rights under a contract, *Jones v. Loc. 520, Int'l Union of Operating Eng'rs*, 603 F.2d 664, 665-66 (7th Cir. 1979), and district courts in this circuit have relied on that case to assume that third-party beneficiaries also have enforcement rights under § 1981. *See, e.g., Kass-Hout v.*

4

*Cmty. Care Network Inc.*, No. 2:20-CV-441-JPK, 2022 U.S. Dist. LEXIS 158953, at *11-13 (N.D. Ind. Sept. 2, 2022); *Smith v. Chi. Archdiocese*, No. 02 C 2261, 2004 U.S. Dist. LEXIS 11140, at *25 (N.D. Ill. June 16, 2004).

Under § 1981, state law determines whether the plaintiff would have rights as a third-party beneficiary. *Kass-Hout*, 2022 U.S. Dist. LEXIS 158953, at *14 (collecting cases). Illinois law follows the "intent to benefit" rule—courts must determine "whether the contracting parties intended to confer a benefit upon a nonparty to their agreement." *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995); *Hutsonville Cmty. Unit Sch. Dist. No. 1 v. Ill. High Sch. Ass'n*, 195 N.E.3d, 798, 804-05 (Ill. App. Ct. 2021). The complaint alleges that Ms. Ewing contracted with RCS to provide educational services to B.E., Dkt. 22 ¶ 5, and it's certainly plausible that RCS also intended for B.E. to benefit from its educational services. That is sufficient, at this stage, for B.E. to seek enforcement of the contract with RCS as a third-party beneficiary.

Finally, RCS argues that the complaint fails to allege intentional racial discrimination against B.E. by RCS because RCS said it would punish A.W. and undertook an investigation. But as long as the factual allegations describe a situation in which it is plausible that RCS acted with the intent to discriminate against B.E., that is sufficient to state a claim at this stage. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010) ("A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that

5

the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case.").

Under the factual allegations in this case, it's plausible that RCS acted with an intent to discriminate. B.E. is African American, Dkt. 22 ¶ 8, and the complaint alleges multiple incidents where she may have been unfairly punished. For example, after the fight between A.W. and B.E., only B.E. was punished even though A.W. was the aggressor. Dkt. 22 ¶¶ 23-27, 33, 37. There's also the allegation that B.E. received a double demerit for something not prohibited by the school's student handbook. Dkt. 22 ¶ 38. It's plausible that RCS treated B.E. differently in these instances because of her race. That RCS said it would discipline A.W. and conduct an investigation doesn't negate the possibility of intentional discrimination, especially in light of the lack of disciplinary measures to deter A.W.'s behavior and the RCS principal's downplaying of the harm to B.E.. Dkt. 22 ¶¶ 16-17, 31, 43. The complaint sufficiently states B.E.'s § 1981 claim against RCS.

## II. Title VI and Title IX (Counts II and III)

Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, or national origin by federally assisted programs. 42 U.S.C. § 2000d. Title IX prohibits discrimination on the basis of sex by federally assisted educational programs. 20 U.S.C. § 1681(a). RCS limits its challenge to these claims to the argument that the complaint fails to meet the "high standard" for alleging intentional discrimination under Titles VI and IX. Dkt. 28 at 7.[1] But again, the standard is plausibility.

---

[1] RCS relies on a summary judgment decision to establish this "high bar." Dkt. 28 at 7 (quoting *Doe v. Galster*, 768 F.3d 611, 619 (7th Cir. 2014)). But that's the wrong standard to

*See Swanson v. Citibank, N.A.*, 614 F.3d at 404-05. The earlier analysis that one can plausibly infer racial discrimination still applies, so the Title VI claim survives. And as for the Title IX claim, the complaint also alleges that B.E. is female, Dkt. 22 ¶ 9, so it's also plausible for the same reasons that RCS intentionally discriminated on the basis of sex. The Title IX claim also survives.

### III.    Illinois Hate Crimes Act (Count IV)

RCS argues that the complaint fails to state a claim under the Illinois Hate Crimes Act (IHCA) because RCS didn't do anything that would give rise to liability under the statute. Plaintiffs respond that RCS encouraged or assisted A.W.'s conduct against B.E., but RCS argues that its lack of punishment isn't enough to qualify as encouragement or assistance.

The IHCA itself contains no language about assistance from others. It provides that a person who has been injured by a hate crime can bring a civil action, but it doesn't specify against whom. *See* 720 ILCS 5/12-7.1(c); *cf. Maglaya v. Kumiga*, No. 14-cv-3619, 2015 U.S. Dist. LEXIS 101217, at *46-48 (N.D. Ill. Aug. 3, 2015) (construing an IHCA claim against an alleged conspirator as a claim under Illinois' separate cause of action for civil conspiracy). Plaintiffs instead argue that RCS is liable based on an in-concert theory of liability where a defendant "gives substantial assistance or encouragement." *Borcia v. Hatyina*, 31 N.E.3d 298, 305 (Ill. App. Ct. 2015) (quoting Restatement (Second) of Torts § 876 (Am. L. Inst. 1979)).

---

apply at this stage. *Carlson*, 758 F.3d at 827. Indeed, this Court has a standing order reminding parties that they should rely on cases decided on the same procedural posture.

7

But Plaintiffs fail to explain how RCS' inaction qualifies as "substantial assistance or encouragement." And a mere failure to act is not enough to trigger in-concert liability. *See Simmons v. Homatas*, 925 N.E.2d 1089, 1100 (Ill. 2010). Plaintiffs' only cited authority, *Borcia*, held that a passenger could be liable for the negligence of the driver of a boat because the passenger encouraged the driver to continue operating the boat at an unsafe speed while intoxicated. *Borcia*, 31 N.E.3d at 307-08. In that case, the defendant actively encouraged the driver while the tortious act took place. In this case, RCS' "encouragement" was a lack of action after the fact; the complaint fails to allege any facts that would indicate RCS affirmatively encouraging A.W. to continue bullying B.E.. The IHCA claim is dismissed.

## IV.    Illinois Gender Violence Act (Count V)

RCS similarly challenges the Illinois Gender Violence Act (IGVA) claim by arguing that it didn't encourage or assist A.W.'s conduct against B.E.[2] Plaintiffs rely on the statutory language that "perpetrating" gender-related violence includes "personally encouraging or assisting the act or acts of gender-related violence." 740 ILCS 82/10. But the case they cite is inapposite—in that case, the IGVA claim was dismissed because the plaintiff sought to apply the IGVA retroactively to the defendant's actions that predated the act. *Doe v. Univ. of Chi.*, 939 N.E.2d 76, 81 (Ill. App. Ct. 2010). Like with the IHCA claim, the complaint fails to allege any facts that RCS took more affirmative steps than a failure to act regarding A.W.'s bullying, and Plaintiffs

---

[2] Whether a corporation, as opposed to a person, can be held liable under the IGVA is an open question. *See Gasic v. Marquette Mgmt.*, 146 N.E.3d 10, 13 (Ill. App. Ct. 2019). RCS doesn't raise this issue, however, so the Court assumes that RCS could have acted "personally" under the IGVA.

8

fail to explain how inaction qualifies as encouragement or assistance under the IGVA. *See Franks v. Anchez, Inc.*, No. 22 C 1763, 2022 U.S. Dist. LEXIS 168499, at *5-6 (N.D. Ill. Sept. 19, 2022) (collecting cases where "knowledge plus inaction" was insufficient). The IGVA claim is dismissed.

### V. Breach of Contract and Breach of Duty of Good Faith and Fair Dealing (Counts VI and VII)

RCS challenges these state law contract claims as "impermissibly vague." Dkt. 28 at 10. But although the complaint could have provided more information, it sufficiently alleges enough facts for these two claims.

Starting with the breach-of-contract claim, the complaint alleges that "RCS breached the contract when it failed to provide educational services to B.E. in a non-discriminatory fashion." Dkt. 22 ¶ 91. Ms. Ewing contracted with RCS to provide educational services to B.E., Dkt. 22 ¶ 5, and it is plausible that those educational services were intended to be free from discrimination. *See W. Bend Mut. Ins. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) ("[T]he plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (citation omitted)). As discussed for the § 1981 claim, the complaint alleges several instances in which RCS plausibly discriminated against B.E.—and in doing so, RCS would have breached its contract to provide educational services without discrimination. The breach of contract claim survives the motion to dismiss.

The breach-of-duty-of-good-faith-and-fair-dealing claim survives for similar reasons. Under Illinois law, "[e]very contract contains an implied covenant of good faith and fair dealing." *Slay v. Allstate Corp.*, 115 N.E.3d 941, 950-51 (Ill. App. Ct. 2018)

9

(quoting *McCleary v. Wells Fargo Sec., L.L.C.*, 29 N.E.3d 1087, 1093 (Ill. App. Ct. 2015)). So, RCS would have had a duty of good faith and fair dealing under the contract with Ms. Ewing to provide educational services for B.E. And a party to a contract breaches that duty when it "exercise[s] its discretion in a manner contrary to the reasonable expectations of the parties." *Id.* (quoting *McCleary*, 29 N.E.3d at 1094). Again, under the plausibility standard on a motion to dismiss and taking into account the incorporated factual allegations from earlier in the complaint, RCS intentionally discriminated against B.E.—and in doing so, RCS plausibly acted contrary to Ms. Ewing's reasonable expectation that her daughter receive educational services without experiencing discriminatory treatment.

## VI. Negligence (Count XI)

RCS' challenge to the negligence claim focuses on the duty element of a negligence claim. RCS initially argues that it cannot find any common law duties that a school owes to its students related to bullying. Then, in its reply, RCS shifts its argument, arguing that the complaint is too vague as to what specific duties it allegedly breached but conceding that schools generally owe common law duties to students.

The complaint alleges that RCS "owed a duty to B.E. to ensure B.E.'s safety and well-being while she was attending its school" and that it "breached i[t]s duty to B.E. when it failed to take reasonable steps to address and prevent the discrimination, bullying, harassment and physical assault B.E. experienced at RCS." Dkt. 22 ¶¶ 108-09. The complaint doesn't specifically state the source of the duty toward B.E., but that isn't a reason to dismiss the claim—"[a] complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error." *Rabe v. United Air Lines,*

10

*Inc.*, 636 F.3d 866, 872 (7th Cir. 2011); *cf. Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1004 (N.D. Ill. 2017) ("The facts alleged in Count III therefore give rise to a plausible legal claim, whether under a theory of breach of contract, theft, conversion, fraud, or something else.").

Plaintiffs rely on three cases to argue that this duty to "ensure B.E.'s safety and well-being" arises under common law.[3] Although Plaintiffs say that this is about the duties a school, even a private school, owes to its students, the cases they cite focus on the duty owed by a business to an invitee. *See Gubbe v. Catholic Diocese of Rockford*, 257 N.E.2d 239, 242 (Ill. App. Ct. 1970) ("The answer to this question must be determined irrespective of whether the defendant is a private parochial school or whether it is considered like any other defendant."); *Leonardi v. Bradley University*, 625 N.E.2d 431, 434-35 (Ill. App. Ct. 1993) (finding that a student can be a business invitee of a university only when engaged in activities conducted or sponsored by the university). A business can be liable under certain circumstances for physical harm caused by a third party, and Illinois courts have relied on this principle to determine whether a business owes a duty to an invitee present on its land. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1058 (Ill. 2006) (citing Restatement (Second) of Torts § 344 (Am. L. Inst. 1965)). For example, if a defendant has reason to know that third-

---

[3] The complaint states that "RCS' duties to B.E. arise under common law and under 105 ILCS 5/27-23.7," Dkt. 22 ¶ 108, but Plaintiffs don't respond to RCS' argument that 105 ILCS 5/27-23.7 doesn't apply because RCS is sectarian. The Court proceeds without considering duties under 105 ILCS 5/27-23.7. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

11

party conduct was "likely to endanger" its customers, then it may owe a duty of reasonable care. *Id.* at 1062.[4]

The complaint alleges that RCS had been informed of A.W.'s behavior toward B.E., including the incident where A.W. slapped B.E. Dkt. 22 ¶¶ 16, 30-32. The complaint also alleges that A.W.'s bullying continued after each of these reports, such as the incident where A.W. threw a banana at B.E. Dkt. 22 ¶¶ 18, 22-26, 37, 40. On multiple occasions, RCS was thus aware that A.W.'s behavior was likely to endanger B.E. again in the future. Thus, it's plausible that RCS owed B.E. a duty of care arising out of their business-invitee relationship. And because a lack of duty is RCS' only basis for dismissal, the negligence claim survives RCS' motion to dismiss.

## CONCLUSION

The § 1981 claim (Count I) is dismissed in part. The IHCA and IVGA claims (Counts IV and V) are dismissed. These dismissals are without prejudice. Plaintiffs

---

[4] Plaintiffs cite only one example of applying this business-invitee duty to a private school, *see Gubbe*, 257 N.E.2d at 242, and the Court didn't find any other examples of common law duties owed by private schools to their students. But the business-invitee duty is not unlike the duty of care owed by public schools under Illinois law. And although public schools' duty of care is statutory, it's grounded in the common law principle of *in loco parentis*. 105 ILCS 5/24-24 ("In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils."); *Gammon v. Edwardsville Cmty. Unit Sch. Dist.*, 403 N.E.2d 43, 45 (Ill. App. Ct. 1980). For example, Illinois courts have found that schools owe a duty to their students to maintain discipline. *See, e.g., Brooks v. McLean Cnty. Unit Dist. No. 5*, 8 N.E.3d 1203, 1210 (Ill. App. Ct. 2014) (finding a duty to supervise students as part of this "overall duty to maintain discipline"); *Gammon*, 403 N.E.2d at 45; *Gauthier v. Chi. Bd. of Educ.*, 2024 IL App (1st) 230442-U ¶ 45 (Ill. App. Ct. Feb. 20, 2024). Because schools stand in the position of a parent or guardian, liability under this principle is limited to willful or wanton misconduct, requiring that a "teacher or school was aware or should have known that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm." *Jackson v. Chi. Bd. of Educ.*, 549 N.E.2d 829, 833 (Ill. App. Ct. 1989); *see also Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514-515 (7th Cir. 2010).

may file an amended complaint by September 30, 2024; if no amended complaint is filed by then, the dismissals will convert to dismissals with prejudice.

Date: August 28, 2024

                                                  HON. IAIN D. JOHNSTON
                                                  *United States District Judge*

13